IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

RECEIVED

AUG 2 4 2023

U.S. District Court
Middle District of TN

Marcellus Johnson,                    )
                                      )
        Plaintiff,                    )
                                      )
v.                                    )        NO. _____
                                      )
AMBER L. PHILLIPS, in                 )
her official Capacity as Correctional )
Program Director 2 for the            )
TENNESSEE DEPARTMENT                  )
OF CORRECTION, et. al.                )
                                      )        JURY TRIAL DEMAND
        Defendant.                    )

## COMPLAINT FOR PROSPECTIVE INJUNCTIVE RELIEF

### INTRODUCTION

1.      This is a civil rights action filed by Marcellus Johnson, pro se, for injunctive and declaratory relief from Defendant's violations of Plaintiffs constitutional rights secured under the Eighth Amendment prohibition of cruel and unusual punishment, Fourteenth Amendment Equal Protection and Due Process (substantive) Clause, and Article I, Section 9, Clause 3, Ex Post Facto clause of the United States Constitution, via 42 U.S.C. § 1983 et seq., against Amber Phillips, in her official capacity as Tennessee Department of Correction (TDOC) Correctional Program Director 2.

2.      Specifically, Plaintiff alleges a claim that Defendant's arbitrary interpretation of "Tennessee's vague life sentence statutes", causes deliberate indifference in the calculation procedures method, as applied to Plaintiff, in violation of the Plaintiff's constitutional "Ex Post Facto" rights secured under Article I, Section 9, Clause 3, of the United States Constitution;

1

3.     Specifically, Plaintiff alleges a claim that Defendant's arbitrary interpretation of "Tennessee's vague life sentence statutes", causes deliberate indifference in the calculation procedures method, as applied to Plaintiff, in violation of the Plaintiff's constitutional "Substantive Due Process" rights secured under the Fourteenth Amendment, Section 1 Clause of the United States Constitution;

4.     Specifically, Plaintiff alleges a claim that Defendant's arbitrary interpretation of "Tennessee's vague life sentence statutes", causes deliberate indifference in the calculation procedures method, as applied to Plaintiff, in violation of the Plaintiff's constitutional "Equal Protection" rights secured under the Fourteenth Amendment, Section 1 Clause of the United States Constitution;

5.     Specifically, Plaintiff alleges a claim that Defendant's arbitrary interpretation of "Tennessee's vague life sentence statutes", causes deliberate indifference in the calculation procedures method, as applied to Plaintiff, in violation of the Plaintiff's "prohibition against cruel and unusual punishment" rights secured under the Eighth Amendment of the United States Constitution.

6.     Specifically, Plaintiff alleges a claim that "Tennessee's life sentence statutes" are unconstitutionally vague, as applied to Plaintiff, and violates the Plaintiff's Eighth Amendment prohibition of cruel and unusual punishment, Fourteenth Amendment Equal Protection and Due Process (substantive) Clause of the Fourteenth Amendment, and Article I, Section 9, Clause 3 Ex Post Facto clause of the United States Constitution.

## JURISDICITON AND VENUE

7.     This Court has jurisdiction over Plaintiff's constitutional civil rights claims as invoked pursuant to 28 U.S.C. 1983, 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a).

2

8.      Venue is proper in this federal judicial district pursuant to 28 U.S.C. § 1391, since a substantial portion of the events or omissions giving rise to these claims occurred in Davidson County, Tennessee and because Defendant, in her official capacity resides in and/or regularly conducts business within this judicial district, and, thus is subject to personal jurisdiction within this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMIDIES

Under this 1983 complaint exhaustion is not a requirement.

## PARTIES

9.      Defendant Amber Phillips is the Correctional Program Director 2 for the Tennessee Department of Correction, and within her office has broad responsibility for calculating sentences for TDOC prisoners and setting and overseeing those sentence calculations. Defendant Phillips is sued in her official capacity only.

10.     Plaintiff, Marcellus Johnson, is an adult resident of the State of Tennessee and is currently incarcerated at the Bledsoe County Correctional Complex. (TDOC ID 557767), serving a life sentence.

11.     Plaintiff, Marcellus Johnson, understands that there is no Sentence Management Director at this time and reserves the right to add Defendants as they become known to Plaintiff.

## LEGAL STANDARD

12.     Pursuant to 42 U.S.C. § 1983, every person "who under color of any statute, ordinance regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

3

Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

13. The Eighth Amendment to the United States Constitution states that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted."

14. The Due Process Clause of the Fourteenth Amendment to the United States Constitution states that no State shall "deprive any person of life, liberty, or property, without due process of law."

15. The Ex Post Facto clause rights secured under, Article I, Section 9, Clause 3, of the United States Constitution forbids the federal government and states from passing laws that impose or increase criminal liability or punishment retroactively.

16. The Equal Protection Clause, rights secured under the Fourteenth Amendment, Section 1 Clause of the United States Constitution states that no State shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

17. Plaintiff alleges his cruel and unusual punishment arises out of Defendant Phillips' arbitrary interpretation used in the calculation procedures method of Tennessee's unconstitutionally vague life sentence statutes, as applied to Plaintiff, violates Plaintiff's Eighth Amendment prohibition of cruel and unusual punishment, Fourteenth Amendment Equal Protection and Due Process (substantive) Clause of the Fourteenth Amendment, and Article I, Section 9, Clause 3 Ex Post Facto clause of the United States Constitution.

18. Plaintiff alleges that Defendant Phillips' arbitrary interpretation of Tennessee's unconstitutionally vague life sentence statutes, as applied to Plaintiff, is unconstitutional in

4

violation of Plaintiff's "Equal Protection" rights secured under the Fourteenth Amendment, Section 1 Clause of the United States Constitution.

## STATEMENT OF FACTS

19.     Defendant Phillips, as Correctional Program Director 2 has the responsibility of calculating sentences of those convicted of a crime, T.C.A. § 40-28-129, which states:

> "Not withstanding any other provision of the law to the contrary, the department of correction shall be responsible for calculating the sentence expiration date and the earliest release date of any felony offender sentenced to the department of correction and any felony offender sentenced to confinement in a county jail or workhouse for one (1) or more years."

(Also see *Shorts v. Bartholomew*, 278 S.W.2d 26, 278).

20.     Defendant Phillips, in her career, has submitted numerous sworn affidavits in court and answered voluminous request (CR-3118)(RDA 1167) detailing her sentence calculation procedures method. This includes life sentences.

21.     Plaintiff, Marcellus Johnson , conviction offense date of first-degree is November 2 . 2013 and the court imposed a life sentence under the Sentence Reform Act of 1989.

## The Sentence Reform Act of 1989

22.     In the Sentence Reform Act of 1989, the Legislature changed the conviction class of first degree murder from Class X to a Class of its own. See, T.C.A. § 39- 13-201 et. seq., "first degree murder," statute which defined first degree murder, and sentencing.

23.     The Legislature further enacted T.C.A. § 40-35-101. "Short Title." This statute lists the sentence ranges and release eligibility for all felony classifications except for first-degree murder. The statute reads:

5

> **NOTE**: First Degree Murder **excluded** from classification of sentencing Process and sentencing solely according to first degree murder statute.

The problem begins here because T.C.A. § 40-35-101 et. seq., (above) does not address the sentencing for first-degree murder but is being applied cumulatively.

24.     See also, T.C.A. 39-11-117 which states:

> (a)(1) For the purpose of classification of other offenses, first degree murder is one (1) class above Class A.

> (3)(b) For the sole and exclusive purpose of determining the classification of prior offenses under sentencing guidelines, first degree murder is considered a class A offense.

25.     Tennessee enacted the Criminal Sentencing Reform Act of 1989 that amended T.C.A. § 40-35-501(a)(2), which states:

> "Except for inmates who receive sentences of imprisonment for life without the possibility of parole only inmates with felony sentences of more than two (2) years or consecutive felony sentences equaling a term greater than two (2) years shall be eligible for parole consideration."

26.     This new law, "T.C.A. § 40-35-101, "Short Title." classified all felonies according to their seriousness and a sentencing grid divided these classifications into ranges depending upon the number of prior convictions. It further implemented enhancing and mitigating factors. This statute was specific in its lists of <u>sentence ranges and **parole release eligibility**</u> for all felony classifications **except for first-degree** murder. The concept "RED" as applied to these classifications does not pertain to the sentencing of first degree murder and cannot be cumulatively applied as Defendant's calculation procedure method applies it.

27.     In 1993, the Legislature amended T.C.A. § 39-13-201 et seq., to include life without the possibility of parole, and the twenty-five (25) year parole eligibility requirement.

6

28. Also, in 1993 the General Assembly amended T.C.A. § 40-35-501(h)(1) resulting in first degree murder being required to serve a minimum of twenty-five (25) calendar years.

> "(h)(1) Release eligibility for each defendant receiving a sentence of imprisonment for life for first degree murder shall occur after service of sixty percent (60%) of sixty (60) years less sentence credits earned and retained by the defendant, but in no event shall a defendant sentenced to imprisonment for life be **eligible for parole** until the defendant has served a minimum of twenty-five **(25) full calendar years...**" (**Emphasis added**)

29. Further, in 1993, The General Assembly <u>amended</u> T.C.A. § 39-13-204 to coincide with § 40-35-501(h)(1) and requiring a jury be instructed of the twenty-five (25) year minimum before being released on parole.

> (a) Upon a trial for first degree murder, .... .
>
> (e)(2) ... The **jury shall be instructed** that a defendant who receives a sentence of imprisonment for life shall not be eligible for parole consideration until the defendant has served at least **twenty-five (25) full calendar years of the sentence**. The jury shall also be instructed that a defendant who receives a sentence of imprisonment for life without possibility of parole shall never be eligible for release on parole.

30. The court in *Tate v. Tennessee Department of Correction* 2017 WL 3741348 stated that the statute **leaves out** the total time other than to say 60% of 60 years, which is 36 years.

31. Defendant Phillips submitted a sworn affidavit testifying that her interpretation of a life sentence conviction with a date of offense on or about November 1, 1989, is computed at 36 years TTS (can reduce with credits earned) and **no expiration if imposed under 1194**.

7

32.     Further Defendant Phillips submitted a sworn affidavit[1], in the case of JY Sepulveda, case NO. 19-517-III, testifying that her interpretation of a life sentence conviction with a date of offense on or about November 1, 1989, is computed at 36 years TTS (can reduce with credits earned) and **no expiration if imposed under 1194**.

33.     The court in this case, memorandum and final order[2], not only relied upon the affidavit of the Amber Phillips but at page three footnote (1) clearly states that Amber Phillips **established** that the result of the 60% of 60 years or thirty-six (36) years determines **when parole is considered**.

34.     Defendant, Amber Phillips, relies upon The Sentence Management Services Procedures Manual for Records Offices[3] as authoritative law pertaining to procedures for the calculation method of maintaining sentences from 1973 to present.

35.     The Manual, page 17, states:

> A Life sentence conviction with a date of offense on or after November 1, 1989, to 6-30-95 is computed at **36 years TTS** (can reduce with credits) and **no expiration."** A life sentence was calculated at 36-years time to serve. (**emphasis added**)

36.     Parole eligibility date and sentence expiration dates have very clear meanings under Tennessee law. See for example, T.C.A. § 41-21-236 discussing sentence release expiration dates and parole dates.

37.     The term Release Eligibility Date **concept** actually originated in the Class X felony law of 1979 which had a similar provision called release classification status which occurred after serving the **entire sentence of a class X felony**.

38.     The Tennessee Class X Felonies Act of 1979 states:

---

[1] See Exhibit (1) attached.
[2] See Exhibit (2) attached.
[3] See Exhibit (3) attached.

Section 2. (1) Murder in the first degree
Section 3. (1) be determinate in nature
          (3) terminate or expire only after service of the entire
sentence day for day, ...
Section 20. (f) The release classification date for a single life sentence
shall be thirty (30) years unless otherwise increased pursuant to
subsection (h) of this section.

39.     The term release eligibility date is very specific as to all crimes except murder in

the first degree as it relates to the grading of the offenses, such as standard offender, mitigated

offender, career offender and the like. There can be no doubt that the legislature intended to

remove release eligibility for all of these enumerated offenses but it is still an open question as to

murder in the first degree because this concept cannot be applied cumulative. See the comments

to T.C.A. § 39-11-117, providing that first degree murder is not punished according to the

sentencing structure contained in T.C.A. § 40-35-105.

40.     Even more, T.C.A. § 40-35-501(a)(1) providing that an "inmate shall not be

eligible for parole until reaching the inmate's release parole eligibility date..." T.C.A. §39-11-117

defines the exception to the terms of "parole" and "release" eligibility date because first degree

murder has **always** fallen outside the sentencing structure of the 1989 law and cannot now be

applied cumulative.

41.     Under the earlier law the RSC date determined when a defendant would first

become eligible for rehabilitative programs such as work release, furlough, and other programs.

Upon hitting the RSC, the person would become eligible for release. Parole did not apply to life

sentences because they had to serve the entire sentence day for day. See *Stewart v. Schofield*

368 S.W. 3d 457 at (14 & 15):

> The court emphasized that **no statute** provided a method for
> determining parole eligibility for offenders serving consecutive
> determinate sentences and the court crafted a solution. The court

9

then crafted a solution for determining parole eligibility and **filling a statutory void**.

42. The courts authority over punishment for crime ends with the adjudication of constitutionality. See *State v. Atkins* 725 S.W.2d 660, 664 (Tenn. (1987).

43. The courts and the Defendant have been repeatedly amending legislation under the guise of crafting solutions to **fill statutory voids**.

44. The powers to define what shall constitute a criminal offense and to asses punishment for a particular crime is vested in the legislation. Moreover, we must presume that the Legislation knows of its prior enactments and knows the existing state of the law at the time it passes legislation.

45. Article II, Section 3 of the Tennessee Constitution vests the state's legislative power solely in the General Assembly. In general, legislative power is the authority to make, order, and repeal law. Specifically, the General Assembly may not delegate to an executive branch agency the exercise of the legislature's discretion as to what the law shall be, because this is a purely legislative function.

46. Defendant Phillips' own affidavits and sentence Manual states: "A life sentence conviction with a date of offense after 11-1-89 to 6-30-95 **is computed at 36 years** TTS (can reduce with credits) and no expiration." A life sentence is calculated at 36-years time to serve. Defendant has never reflected the expiration date.

47. A statutory mandated sentence expiration date is not a speedier release but is in fact part of the sentence imposed by the trial court. Any extension of the expiration date is considered punitive and cruel and unusual punishment.

48. Further, The Sentence Management Procedures Manual, page 17, States

"Effective 7-1-95, offenders convicted of violent offenses (committed on or after 7-7-95) and receive Life Sentences (not life w/o Parole) must **serve 60 years** before **parole eligibility**. The sentence can reduce to no less than 51 years with credit earned." Tennessee courts have ruled that these sentences **expire** as opposed to parole. (**emphasis added**).

49. The Sentence Management Service Procedures Manual, used by the Defendant and Sentence Management, explaining the history of Tennessee sentencing statues supports the facts of Defendant's arbitrary interpretation of the vague life sentence statutes causing deliberate indifference calculation procedure methods, when applied to Plaintiff. Thus, is unconstitutional in violation of the Constitution under the Due Process Clause of the Fourteenth Amendment, Eight Amendment prohibition against cruel and unusual punishment and Ex Post Facto Clause.

50. Even more, the Manual was not promulgated and codified under the rule making process of the Tennessee Uniform Administrative Procedures Act, T.C.A. §§ 4-5-201 et seq.

51. T.C.A. § 4-5-116 holds. "Any agency rule not adopted in compliance with this chapter shall be void and of no effect and shall not be effective against any person or party nor shall it be invoked by the agency for any purpose."

52. Defendant Phillips and Sentence Management Services are in violation of not only Tennessee law but are arbitrarily interpreting and causing deliberate indifference with her calculation and recalculation application of Plaintiff's sentence.

53. The sentencing scheme. T.C.A. § 40-35-501(a)(2) states: "Except for inmates who receive sentences of imprisonment for life without possibility of parole only inmates with felony sentences of more than two (2) years or consecutive felony sentences equaling a term greater than (2) years shall be eligible for parole consideration. This statute is in direct conflict with subsection (i)(1).

54. Further, T.C.A. § 40-35-501 subsection (h)(1) states: "a defendant sentenced to imprisonment for life be eligible for parole until the defendant has served a minimum of twenty-five (25) full calendar years of the sentence…"

55. The Plaintiff was charged with first degree murder and had a claimable statutory and constitutional right to be informed of the criminal penalties and to have the jury know the range of punishment applicable to the charges before deciding guilt or innocence.

56. Plaintiff was tried by jury and sentenced under the Tennessee Sentencing Reform Act of 1989 and subsequent 1995 amendment[4].

57. **In 1995** the General Assembly again amended T.C.A. § 40-35-501(i)(2)(A) requiring specific sentences to serve 100% of the *sentenced imposed by the court*.

(A) The **1995** Amendment to T.C.A. § 40-35-501 stated:

"(i)(1) There shall be no release eligibility for a person committing an offense, on or after July 1, 1995 that is enumerated in subdivision (i)(2). The person shall serve one hundred percent (100%) of the **sentenced imposed** by the court less sentence credits earned and retained. However, no sentence reduction credits authorized by § 41-21-236 or any other provision of law shall operate to reduce the **sentence imposed by the court** by more than fifteen percent (15%)." (Emphasis added)

58. **In 2020** the General Assembly again amended T.C.A. § 40-35-501 to add (H)(2) to reword the 1995 amendment and specifying that a person sentenced to Firs-degree murder from 1995 to the present amendment would serve 100% of sixty (60) years.

"There shall be no release eligibility for a person committing first degree murder, **on or after July 1, 1995**, receiving a sentence of imprisonment for life. The person shall serve one hundred percent (100%) of sixty years less sentence credits earned and retained. However, no sentence reduction credits authorized by § 41-21-236 or any other provision of law, shall operate to reduce the **sentence imposed by the court** by more than fifteen percent (15%)."

---

[4] See exhibits 4, 5, 6.

59.     The General Assembly passed this **clarification bill in 2020** amending the 1995 amendment but they claim that they did not change the language[5]. No person of common intelligence would believe that the 1995 and 2020 clarification amendment, as stated above, have the same meaning and penalties. Even more, how do you apply a 2020 law backward to everyone that was convicted between 1995 until 2020?

60.     The 1995 amendment did not define a life sentence, was in conflict with former (h)(1) and was not properly amended to coincide with T.C.A. § 39-13-204. See, *State v. Golden* No. 02C01-9709-CR-00362, 1998 WL 518071 at *7-*8 (Tenn. Ct. Crim. App. 1998) opinion stating:

> Unfortunately, Tennessee Code Annotated § 39-13-204 was not amended to reflect this change.
>
> **It immediately becomes apparent that the legislature in 1995 overlooked amending Tennessee Code Annotated § 39-13-204 to coincide with the 1995 amendment to Tennessee Code Annotated § 40-35-501.** The statutes presently are in conflict.... (Emphasis added).

61.     The constitution requires that a defendant charged with murder in the first degree must be provided with clear notice of the sentences to which they are subject and be free from cruel and unusual punishment.

62.     The constitution imposes a responsibility upon this court to exercise its judgment to nullify any state law if its application **shocks the conscience**, offends a sense of justice or runs counter to the decencies of civilized conduct, as Plaintiff has established in this complaint.

63.     Even more. On September 30, 2022 the Chancery Court of Davidson County, **Case No. 22-0574-IV** issued an agreed judgment and final Order based upon "(HB 394/SB

[5] See exhibit (7)

13

453) Public Chapter 765) **effective July 15, 2020**." that would re-calculate life sentences from 1995 until present at 60 years.

64. Just within the past ninety (90) days, Defendant Phillips has applied this agreed order to re-calculate Plaintiffs sentence using "(HB 394/SB 453) Public Chapter 765) **effective July 15, 2020**." This is in violation of Plaintiffs U.S. Constitutional rights secured under Ex Post Facto, Substantive Due Process Clause, prohibition against cruel and unusual punishment and equal protection of the law.

65. To have Plaintiff sentenced and then recalculate a punishment greater than that mandated by statute[6] is not only prejudice to the judicial process but violates plaintiffs' substantial constitutional right of due process, violates the constitutional right to be free from cruel and unusual punishment, violates the constitutional right to equal protection of the law, violates the Plaintiff's Ex Post Facto Rights secured under the United States Constitution.

66. Defendant Phillips arbitrary interpretation and deliberate indifference in her application of the vague Tennessee life sentence statutes is in violation of Plaintiff's rights secured under the Eighth Amendment prohibition of cruel and unusual punishment, Fourteenth Amendment Equal Protection and Due Process (substantive) Clause, and Article I, Section 9, Clause 3, Ex Post Facto clause of the United States Constitution.

67. There is extreme ambiguity in the construction of the 1995 amendment removing release "eligibility" for a life sentence. Notice that T.C.A. § 40-35-501(h)(1) specifies that an individual will be subject to release eligibility at 60% of 60 years, less credits earned. The 1995 legislative enactments did not amend T.C.A. § 40-35-50l(h)(1) that a person sentenced to life would become eligible for parole when the individual has served a minimum of 25 full calendar

---

[6] T.C.A. § 39-13-204

years of the sentence. Nor, did they amend T.C.A. § 39-13-204 **requiring** a jury be informed of the twenty-five (25) year minimum before being released.

68.     The life sentence statues have become so arbitrary and convoluted that the Tennessee courts, the Tennessee Attorney General, Legislature, Attorneys, Defendants, and Defendant Phillips still does not understand the life sentence statues or penalties applicable.

69.     The Plaintiff has been denied the right to understand the charges against them, denied due process, denied the opportunity to plea due to inaccurate information in violation of the U.S. Constitution. See (ANALYSIS) *Maine v. State 2005 WL 1996631; and Penley v. State. 2004 WL2439287, at *3, No. E2004-00129-CCA-R3-PC (Tenn. Crim . App., November 1,2004).*

70.     The Tennessee Attorney General held pursuant to (h)(1), the 1995 amendment provides that there shall be no release eligibility for a person sentence to life imprisonment, **the two provisions clearly conflict.....** *Tenn. Op. Atty. Gen.* No. 97-098 1997 WL 449672 (Tenn. A.G., July 1, 1997).

71.     Some 24 years after the 1995 Amendment, due to the controversy and confusion between the Tennessee Courts and the Sixth Circuit concerning (h)(1) and (i)(2)(A) the Tennessee House and Senate **passed Public Chapter 765 House Bill No. 394** in an attempt to "**CLARIFY**" the murder statute. They are trying to go back over twenty-five years ago and change the meaning of the statute for offenders from November 1, 1989 to present.

72.     A bill presented by the General Assembly attempting to clarify the thirty (30) year old amendments leaves no doubt that the statues are vague, debatable and in conflict with other statutes. A version of that bill (HB 394/SB 453) was ultimately approved effective July 15, 2020 as Public Chapter 765.

15

73.     This clarification (bill) law, as applied to Plaintiff is unconstitutional in violation of the United States Constitution secured under the Due Process Clause of the Fourteenth Amendment, Eight Amendment prohibition against cruel and unusual punishment and Ex Post Facto Clause.

74.     Even more, the jury pattern instruction T.P.I. 7(a) & 7(b)[7] was changed by a committee, prior to 2021. Sadly, the committee acknowledged the fact that the twenty-five (25) year minimum was required by law, but **THEY** felt was not proper law. It was the law and **no committee, judge or attorney** can alter or rewrite the laws of those charged with a crime and constitutionally protected. The General Assembly, in its wisdom, certainly has the right and power to direct the judicial process concerning the range of punishment resulting from a conviction of life or life without the possibility of parole not the Court, Attorneys, Sentence Management Services, or other inmates.

75.     Tennessee Code Annotated § 39-13-202(c) provides for three possible sentences for first degree murder conviction: death, life imprisonment without the possibility of parole, or life with parole. The state must file a notice of intent to seek the death penalty or life without the possibility of parole.

76.     Former Subsection (h)(2) stated: [t]here shall be no release eligibility for a defendant receiving a sentence of imprisonment for life **without the possibility of parole** for first degree murder." Former Subsection (i)(2)(a) stated the **exact same language** for first degree murder except adding an additional sentence stating, "[t]he person shall serve one hundred percent (100%) of the sentence imposed. **"Both are life without Parole"**

---

[7] See Exhibit 8 attached

77.     Tennessee federal and state courts have relentlessly addressed the issue concerning life sentences imposed under the 1995 amendment to the Sentencing Reform Act of 1989 and have repeatedly concluded that it is **life without parole** eligibility.

> In the later situation, subsection (i)(1) provides the means for **determining the sentence expiration date, and release is not contingent upon a grant of parole.** See also; *State v. Self*, No. E2014-02466-CCA-R3-CD, 2016 WL 4542412, p. 62 (Tenn. Crim. App., November 1, 2016). And (*Pinchon v Washburn* 2020 WL 5250668 at *4) (**Tennessee statute nominally distinguishes between life and life without.**).

78.     The State did not seek the death penalty or life without the possibility of parole and the defendant is subsequently convicted of first degree murder, "the defendant shall be sentenced to imprisonment for life with parole by the court." The life sentence pursuant to § 40-35-501(i)(2)(a) is "life without parole and the State has not filed the notice of intent to seek life without parole. Thereby, Plaintiff's life sentence is unconstitutional and unenforceable.

79.     The Tennessee Attorney General held that "pursuant to (h)(1), and (i)(2)(a) the two provisions clearly conflict. **Even more**, the Attorney General's entire analogy may have been true if the legislature had amended (h)(1), and T.C.A. § 39-13-204. In *State v. Golden* the court opined:

> Unfortunately, Tennessee Code Annotated § 39-13-204 was not amended to reflect this change.
>
> **It immediately becomes apparent that the legislature in 1995 overlooked amending Tennessee Code Annotated § 39-13-204 to coincide with the 1995 amendment to Tennessee Code Annotated § 40-35-501.** (Emphasis added). *State v. Golden* No. 02C01-9709-CR-00362, 1998 WL 518071 at *7-*8 (Tenn. Ct. Crim. App. 1998):

80.     Even more, the legislator not only amended § 40-35-501(i)(2)(a) to include murder in the first degree, but added several other crimes that are specifically defined to sentencing under T.C.A. § 40-35-101 et. seq. See the comments to T.C.A. § 39-11-117.

providing that first degree murder is not punished according to the sentencing structure contained in T.C.A. § 40-35-105.

81.    Some twenty-three (23) years after the Petitioner's offense date of conviction, The Tennessee Supreme Court in *Brown*[8], *supra*, disagreed and held there was not a conflict. The court held that (h)(1) was for pre-1995 sentences. This analogy is incorrect and unconstitutional because the constitutional requirement of T.C.A. § 39-13-204 was never amended and remained law until 2021.

82.    In *Booker*,[9] the court in a split decision, agreed the 1995 amendment was unconstitutional as applied to juveniles but crafted a solution to move all juveniles to the 1993 statute.

83.    The courts in both cases amended legislation under the guise of crafting solutions to **fill statutory voids.**

84.    The courts authority over punishment for crime ends with the adjudication of constitutionality. See, *State v. Atkins* 725 S.W.2d 660, 664 (Tenn. (1987).

85.    Further, T.C.A. § 40-35-501(a)(1) provides that an "inmate shall not be eligible for parole until reaching the inmate's release eligibility date..." This clearly refers to parole eligibility dates and not release expiration dates. See T.C.A. §39-11-117 which exempts **RED** in this parole concept because first degree murder has always fallen outside the sentencing structure of the 1989 law and cannot now be applied cumulative.

86.    The General Assembly did not amend T.C.A. § 39-13-204, First Degree Murder Sentencing Factors, which required the jury in murder trails be informed of the twenty-five (25) year minimum until twenty-six (26) years after Plaintiff's offense date. Plaintiff has a

---

[8] *Brown v. Jordan.* 2018 WL6381171. No. M2018-01415-SC-R23-CO (Tenn. December 6. 2018)
[9] State v. Booker 2022 WL. 17073278

claimable statutory and constitutional right to be informed of the criminal penalties and to have the jury know the range of punishment applicable to the charges before deciding guilt or innocence.

87. The powers to define what shall constitute a criminal offense and to asses punishment for a particular crime is vested in the legislation. Moreover, we must presume that the Legislation knows of its prior enactments and knows the existing state of the law at the time it passes legislation.

88. Moreover. we must presume that the Legislature knows of its prior enactments and knows the existing state of the law at the time is passes legislation. See *Wilson v. Johnson County* 879 S.W.2d 807. 810 (Tenn.1994).

89. Article II. Section 3 of the Tennessee Constitution vests the state's legislative power solely in the General Assembly. In general. legislative power is the authority to make. order. and repeal law. Specifically, the General Assembly may not delegate to an executive branch agency the exercise of the legislature's discretion as to what the law shall be, because this is a purely legislative function.

90. To have Plaintiff's sentence repeatedly recalculated to a punishment greater than that mandated by statute is not only prejudice to the judicial process but violates plaintiffs' constitutional right of substantial due process. violates the constitutional right to be free from cruel and unusual punishment. violates the constitutional right to equal protection of the law and violates the Ex Post Facto clause.

91. The vagueness of former T.C.A. § 39-13-204 and former § 40-35-501(i)(2)(a) makes it unclear as to whether a person shall serve 100% of twenty-five (25) year sentence

imposed by the court or the thirty-six (36) year sentence with a maximum allowable reduction of 15%o for sentencing credits earned mandated by statute.

92. The constitution requires that a defendant charged with murder in the first degree must be provided with clear notice of the sentences to which they are subject and be free from cruel and unusual punishment.

93. The 1995 first degree murder sentencing statute is unconstitutionally vague, as evident by the numerous court opinions, Attorney General's Memos, and Attorneys representing clients in first degree murder as stated within Plaintiff's complaint. See also *Maine v. State*, 2005 WL 1996631 at (ANALYSIS).

94. A plea carries the constitutional guarantee of knowing and understanding the criminal penalties of one charged with a crime but this guarantee must be wholly protected of one charged with the crime of murder. Even more, one who claims his innocence and proceeds to trial should never suffer from vague statutes; especially one charged with the crime of murder and has the possibility of having his life taken by such consequences. This constitutional protection requires heightened substantive due process.

95. Therefore, Defendant Phillips arbitrary interpretation and deliberate indifference in the calculation procedures method and application of the vague "Tennessee life sentence statutes" violates the Plaintiffs' Substantive Due Process rights secured under the fourteenth Amendment, the right to be free from cruel and unusual punishment secured under the eighth Amendment, violates the Ex Post Facto clause and violates the Equal Protection of Law rights secured under the fourteenth Amendment of the U.S Constitution.

96. Tennessee's statutes, regarding life sentences, as applied to Plaintiff, is unconstitutionally vague and so arbitrary that Plaintiff has been denied the right to understand

20

the criminal penalties, denied Due Process, denied the opportunity to make informed plea decisions based upon inaccurate information. caused the Plaintiff to suffer cruel and unusual punishment, caused Plaintiff to suffer violations under the Ex Post Facto clause.

97.     The jury instruction under former §39-13-204 was not amended to reflect the 51 years until 2021 some 26 years after the Plaintiff's date of offense and cannot now be applied to Plaintiff. This is a clear violation of Plaintiff's constitutional "Ex Post Facto" rights secured under Article I, Section 9, Clause 3, of the United States Constitution

98.     Tennessee Code Annotated former § 40-35-501(i)(2)(a) is unclear as to whether it imposed a sentence greater than twenty-five (25) years imposed under § 39-13-204, nor was TCA § 39-13-204 amended to coincide with former § 40-35-501(i)(2)(a).

99.     The 14th Amendment does not protect against all deprivations of liberty. It protects only against deprivation of liberty accomplished "without due process of law". Under these circumstances. the adequacy of the state remedy is irrelevant. Even more, in the field of substantive rights and duties of the legislative judgment, if oppressive and arbitrary, may be overridden by the courts. See, *Tennessee v. Garner v Beebe* 743 F.2d 342 (6th Cir. 1984); *Baker v. Mccollan* 443 U.S. 137 (1979); *Palko v. Connecticut*. 302 U.S. 319 (1937); Also *Haag v. Cuyahoga County* 619 F.Supp 262, *278.

100.    Tennessee's sentencing statutes regarding life sentence. as applied to the plaintiff. is unconstitutionally vague and the **rule of lenity** demands that ambiguities in criminal statutes be resolved in favor of the Plaintiffs. (*U.S. v. Batchelder*. 99 S.Ct. 1298, 1979).

101.    The Supreme Court has held:

> "When interpreting a criminal statute. we do not play the part of a
> mind reader. In our seminal rule-of-lenity decision, Chief Justice
> Marshall rejected the impulse to speculate regarding a dubious
> congressional intent '[p]robability is not a guide which a court. in

21

construing a penal statute, can safely take.' *United States v. Wiltberger*, 5 Wheat. 76, 105 L.Ed. 37 (1820). And Justice Frankfurter, writing for the Court in another case, said the following: **'when Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity.'** *Bell v. United States*, 349 U.S. 81, 83, 75 S.Ct. 620, 99 L.Ed. 905 (1955). *United States v. Santos*, 553 U.S. 507, 515, 128 S.Ct. 2020, 1701 L.Ed.2d 912 (2008).

## Plaintiffs (Marcellus Johnson)' Sentence Details

1.     Plaintiff, Marcellus Johnson , conviction offense date of first-degree is November 2 , 2013 and the court imposed a life sentence under former T.C.A. § 39-13-204. The trial court imposed the life sentence under T.C.A. § 39-13-204.

2.     Former T.C.A. § 39-13-204 and § 40-35-501(i)(1)(2)(a) can be interpreted to read that the person shall serve 100% of the sentence imposed by the court of twenty-five years (25) or 100% of 36 years with a maximum allowable reduction of 15% for sentencing credits earned.

3.     In the Plaintiff's case, who originally received the sentence under T.C.A. § 39-13-204 the statute is vague and unconstitutionally imposes a sentence greater than that required by statute of murder in the first degree at the time of Plaintiff's sentence. This is a clear violation of the Plaintiff's substantial due process rights. The new statutes are unenforceable.

4.     The Defendant originally sentenced the Plaintiff as described in the Sentence Management Services Procedures Manual, page 17:

> "Effective 7/1/95, offenders convicted of violent offenses (committed on or after 7/1/195) and receive a life sentence (not Life w/o Parole) must serve 60 years before parole eligibility. The sentence can reduce to no less than 51 years with credit earned."

5.     Plaintiff sentence is imposed under former T.C.A § 39-13-204. As early as 1998 the courts were aware that former T.C.A. § 39-13-204 and former T.C.A. § 40-35-501(i)(1) were

not amended to coincide with each other. (See, *State v. Golden*, No. 02C01-9709-CR-003621 998 WL 518071, at \*7 -\*8 (Tenn. Ct. Crim. App.1998).

> Unfortunately, Tennessee Code Annotated $ 39-13-204 was not amended to reflect this change.

> It immediately becomes apparent that the **legislature in 1995 overlooked amending** Tennessee Code Annotated § 39-13-204 to coincide with the 1995 amendment to Tennessee Code Annotated § 40- 35-501. The statutes presently are in conflict.

6.    Article II, Section 3 of the Tennessee Constitution vests the state's legislative power solely in the General Assembly. In general, legislative power is the authority to make, order and repeal law. Specifically, the General Assembly may not delegate to an executive branch agency the exercise of the legislature's discretion as to what the law shall be, because this is a purely legislative function.

## CAUSES OF ACTION
### COUNT 1

**Defendant Phillips arbitrary interpretation and application of "Tennessee's vague life sentence statutes", as applied to Plaintiff, violates the Plaintiff's constitutional rights of "Substantive Due Process Clause of the Fourteenth Amendment, Eighth Amendment Cruel and Unusual punishment, Article 1 Section 9 Ex Post Facto Clause, "Equal Protection" rights secured under the Fourteenth Amendment of the United States Constitution, and 42 U.S.C. § 1983 in unconstitutionally calculating the Plaintiff's life sentences;**

**(Asserted by Plaintiff against Defendant, in her official capacity.)**

1. Plaintiff brings this action arising out of cruel and unusual punishment based on Defendant Phillips arbitrary interpretation and deliberate indifference in the calculation procedures method in the application of Tennessee's vague life sentence statues. Defendant is in violation of Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment depriving "Plaintiff" of life, liberty, or property, without due process of law, and the Eighth

23

Amendment of the United States Constitution," Prohibition of Cruel and unusual punishment: U.S. Const. amend. XIV, § 1.

2. The United States Supreme Court has acknowledged "vague sentencing provisions may pose constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute. *United States v. Batchelder*, 442 U.S. 114, 123 (1979).

3. Pursuant to 42 U.S.C. § 1983, any person who, under color of law, deprives another person of "any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured at law, suit in equity, or other proper proceeding for redress."

4. As set forth in the allegations above, Defendant Phillips' calculation procedures method, due to the arbitrary interpretation of Tennessee's vague life sentence statues, has failed to apply Plaintiff's life sentence pursuant to statutory and constitutional mandates. Defendant has caused Plaintiff's to suffer constitutional violations of "Substantive Due Process" of the Fourteenth Amendment, "Cruel and Unusual Punishment" under the Eighth Amendment, "Equal Protection" rights secured under the Fourteenth Amendment, Section 1, "Ex Post Facto" rights under Article I, Section 9, Clause 3, of the United States Constitution and 42 U.S.C. § 1983.

5. Plaintiff is entitled to all available relief under the law necessary to make Plaintiff whole, including without limitation:

A. A finding that the relevant sentencing statutes as described herein, as applied to Plaintiff, be found unconstitutionally vague and therefore unenforceable;

B. A finding that Plaintiffs' rights pursuant to the Eighth and Fourteenth Amendments of the United States Constitution have been violated via the infliction of cruel and

24

unusual punishment, substantive due process violations, Ex Post Facto violations and Equal Protection violations.

C.      Order Defendant and all relevant Tennessee agencies and departments to immediately implement constitutionally sound policies, practices and procedures to timely and efficiently calculate offender sentences of those similarly situated, sentence of life, to conform to the requirements of the United States Constitution.

D.      The Plaintiff's sentence is unenforceable and Plaintiff must be resentenced under the 1989 Sentencing Reform Act *formerly* (g). Resentencing the Plaintiff under the 1989 sentencing Reform Acts is not a favorable judgment and would **"at most"** speed a parole hearing application, but it would not automatically result in speedier release. See *Hill v. Snyder* 878 F.3d 196 (6th Cir. 2017.)(cumulative cases).

E.      Reasonable attorney fees, expenses, and costs to the maximum extent permitted by law, including under 42 U.S.C. § 1983; and;

F.      All other relief, legal or equitable, that the Court deems just and proper.

### CAUSES OF ACTION
### COUNT 2

**"Tennessee's life sentence statutes, as applied to Plaintiff, are vague" and violates the Plaintiff's Eighth Amendment prohibition of cruel and unusual punishment, Equal Protection of the Law, violation of Substantive Due Process Clause of the Fourteenth Amendment of the United States Constitution, and violation of the Ex Post Facto clause of the United States Constitution.**

1.      Plaintiff brings this action arising out of Tennessee's life sentence statutes and, as applied to Plaintiff, are vague and violates the Plaintiff's Eighth Amendment prohibition of cruel and unusual punishment, Equal Protection of the Law, violation of Substantive Due Process

Clause of the Fourteenth Amendment of the United States Constitution, and violation of the Ex Post Facto clause of the United States Constitution.

2.    The United States Supreme Court has acknowledged "vague sentencing provisions may pose constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute. *United States v. Batchelder*, 442 U.S. 114, 123 (1979).

3.    Pursuant to 42 U.S.C. § 1983, any person who, under color of law, deprives another person of "any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured at law, suit in equity, or other proper proceeding for redress."

4.    As set forth in the allegations above, Defendant Phillips' calculation procedures method, due to the arbitrary interpretation of Tennessee's vague life sentence statues, has failed to apply Plaintiff's life sentence pursuant to statutory and constitutional mandates. Defendant has caused Plaintiff's to suffer constitutional violations of the "Substantive Due Process" of the Fourteenth Amendment, "Cruel and Unusual Punishment" under the Eighth Amendment, "Equal Protection" rights secured under the Fourteenth Amendment, Section 1, "Ex Post Facto" rights under Article I, Section 9, Clause 3, of the United States Constitution and 42 U.S.C. § 1983.

5.    Plaintiff is entitled to all available relief under the law necessary to make Plaintiff whole, including without limitation:

A.    A finding that the relevant sentencing statutes as described herein, as applied to Plaintiff be found unconstitutionally vague and therefore unenforceable;

B.    A finding that Plaintiffs' rights pursuant to the Eighth and Fourteenth Amendments of the United States Constitution have been violated via the infliction of cruel and

unusual punishment, substantive due process violations, Ex Post Facto violations and Equal Protection violations.

G.    Order Defendant and all relevant Tennessee agencies and departments to immediately implement constitutionally sound policies, practices and procedures to timely, efficiently calculate those similarly situated, sentence of life, to conform to the requirements of the United States Constitution.

H.    The Plaintiff's sentence is unenforceable and must be resentenced under the 1989 Sentencing Reform Act *formerly* (g). Resentencing the Plaintiff under the 1989 sentencing Reform Acts is not a favorable judgment and would **"at most"** speed a parole hearing application, but it would not automatically result in speedier release. See *Hill v. Snyder* 878 F.3d 196 (6th Cir. 2017.)(cumulative cases).

I.    Reasonable attorney fees, expenses, and costs to the maximum extent permitted by law, including under 42 U.S.C. § 1983; and;

J.    All other relief, legal or equitable, that the Court deems just and proper.


## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for the following relief:

A.  Plaintiff's prays for this Court to issue an injunction directing the Defendant to cease and desist in the cruel and unusual punishment of Plaintiff and all those similarly situated under the unconstitutional 1995 life sentence Amendment.

B.  A finding that the relevant sentencing statutes as described herein to be unconstitutionally vague and therefore unenforceable;

C. A finding that Plaintiffs' rights pursuant to the Eighth and Fourteenth Amendments of the United States Constitution have been violated via the infliction of cruel and unusual punishment, substantive due process violations, Ex Post Facto violations and Equal Protection violations.

K. Order Defendant and all relevant Tennessee agencies and departments to immediately implement constitutionally sound policies, practices and procedures to timely, efficiently and accurately process the sentence of plaintiff, and all those similarly situated, in accordance to constitutional mandates. The Plaintiff's sentence must be calculated under § 40-35-501 (h) under the 1989 Sentencing Reform Act (Formerly 501(g) parole eligible). Resentencing the Plaintiff under the 1989 sentencing Reform Acts is not a favorable judgment **"at most"** it would speed a parole hearing application, but it would not automatically result in speedier release. (Tennessee authorities retained discretion to deny parole.)

D. Award Plaintiff all costs, expenses and reasonable attorneys' fees as permitted by law, including under 42 U.S.C. § 1988; and

E. All other relief, legal or equitable, that the Court deems just and proper.

Date: 21st day of August, 2023

Respectfully submitted,

Marcellus Johnson #557767
B.C.C.X. Mens Complex – Unit 6
1045 Horsehead Rd.
Pikeville, TN 37367

## DECLARATION OF VERIFICATION

Pursuant to 28 U.S.C. §1746, I declare under the penalty of perjury that the facts stated within this Complaint under 42 U.S.C. §1983 for Injunctive Relief are true and correct to the best of my knowledge, information and belief.

Signed this the 21st day of August, 2023.

Respectfully submitted,

Marcellus Johnson # 557767

## PROOF OF SERVICE

I hereby certify that a true and exact copy of the foregoing Complaint under 42 U.S.C. §1983 for Injunctive Relief has been placed in the prison mailbox and sent by First Class. U.S. Mail, postage prepaid to:

Amber L. Phillips
Correctional Program Director 2
Rachel Jackson Building, 6th Floor
320 Sixth Avenue, North
Nashville, TN 37243-1465

On this the 21st day of August, 2023.

Respectfully submitted,

Marcellus Johnson # 557767
B.C.C.X. Mens Complex – Unit 6
1045 Horsehead Rd.
Pikeville, TN 37367

29

Marcellus Johnson #557767
B.C.C.X
1045 Horsehead rd.
Pikeville, TN 37367

US POSTAGE PITNEY BOWES

ZIP 37367 $ 003.92⁰
02 7H
0006017106    AUG 21 2023

MEDIA MAIL

RECEIVED

AUG 2 4 2023

U.S. District Court
Middle District of TN

Lynda M. Hill, Clerk
Fred D. Thompson Courthouse
719 Church street, ste 1300
Nashville, TN 37203

LEGAL MAIL                    LEGAL MAIL



LEGAL MAIL

BCCX OUTGOING
MAILROOM
AUG 21 2023
RECEIVED

THE DEPARTMENT OF CORRECTIONS
BCCX HAS NEITHER INSPECTED
NOR CENSORED AND IS NOT
RESPONSIBLE FOR THE CONTENTS